UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE

|  |  |
|---|---|
| UNITED STATES OF AMERICA, ) ) ) Plaintiff/Respondent, ) ) v. ) ) EUGENE SISCO III, ) ) Defendant/Movant. ) ) | No. 7:20-CR-23-REW-HAI<br><br>RECOMMENDED DISPOSITION |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

On April 2, 2024, federal prisoner Eugene Sisco III filed a timely *pro se* motion for postconviction relief under 28 U.S.C. § 2255. D.E. 213. The government responded in opposition. D.E. 218. On September 12, 2024, Sisco replied. D.E. 222. The Sixth Circuit described the background of the case in the Opinion affirming Sisco's conviction:

> While operating several outpatient opioid abuse disorder clinics in southeastern Kentucky, Eugene Sisco, III devised two schemes aimed at bilking his clients and the federal government respectively. One involved charging his patients directly for services that Medicaid otherwise would have covered (and sometimes did actually cover). The other required patients, irrespective of medical need, to provide weekly urine samples and have those samples undergo multiple, unnecessary tests at Sisco's urinalysis laboratory. Those services were billed to the government.
>
> Together, these schemes netted Sisco millions. They also garnered him a criminal indictment: a federal grand jury charged Sisco with one count of wire fraud (for the cash payment scheme) and one count of health care fraud (for the urinalysis scheme). After a six-day trial, a jury found Sisco guilty on both counts.

*United States v. Sisco*, No. 22-5202, 2023 WL 119398, at \*1 (6th Cir. Jan. 6, 2023); D.E. 172 at 1. Sisco now argues that he received ineffective assistance from trial counsel and that the Court

lacked jurisdiction over the charges. D.E. 213, 222. The undersigned herein recommends that Sisco's motion to vacate his conviction be denied, without a hearing, with no certificate of appealability to issue

### I. Legal Standards

Under § 2255, a federal prisoner may seek habeas relief because his sentence violates the Constitution or federal law, the federal court lacked jurisdiction to impose such a sentence, or the sentence exceeds the maximum authorized by law. 28 U.S.C. § 2255. To prevail on a § 2255 motion alleging constitutional error, a defendant must establish that the error had a "substantial and injurious effect or influence on the proceedings." *Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999) (citing *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993)). A § 2255 movant bears the burden of proving his or her allegations by a preponderance of the evidence. *McQueen v. United States*, 58 F. App'x 73, 76 (6th Cir. 2003) (per curiam).

The Court recognizes that Sisco is proceeding *pro se*, without the assistance of an attorney. The Court construes *pro se* motions more leniently than motions prepared by lawyers. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Castro v. United States*, 540 U.S. 375, 381-83 (2003).

To successfully assert an ineffective-assistance-of-counsel ("IAC") claim, a defendant must prove both deficient performance and prejudice. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006). To prove deficient performance, a defendant must show that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687. A defendant meets this burden by showing "that counsel's representation fell

2

below an objective standard of reasonableness" as measured under "prevailing professional norms" and evaluated "considering all the circumstances." *Id.* at 688.

However, a reviewing court may not second-guess trial counsel's strategic decisions. *Moss v. Hofbauer*, 286 F.3d 851, 859 (6th Cir. 2002). Thus, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Strickland*, 466 U.S. at 689 (internal quotations omitted). "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.*

To prove prejudice, a movant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. Thus, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691. When evaluating prejudice, courts generally must consider the "totality of the evidence." *Strickland*, 466 U.S. at 695. Courts may approach the *Strickland* analysis in any order, and an insufficient showing on either prong ends the inquiry. *Id.* at 697.

Finally, absent an exceptional circumstance, such as an intervening change in the law, a prisoner may not use a § 2255 motion to relegate an issue that was raised on appeal. *Wright v. United States*, 182 F.3d 458, 467 (6th Cir. 1999); *DuPont v. United States*, 76 F.3d 108, 110 (6th Cir. 1996).

3

## II. Relevant Background

Count One of the Indictment alleges wire fraud, in violation of 18 U.S.C. § 1343. That statute states:

> Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined under this title or imprisoned not more than 20 years, or both.

18 U.S.C. § 1343.

Count Two alleges health care fraud in violation of 18 U.S.C. § 1347, which states:

> (a) Whoever knowingly and willfully executes, or attempts to execute, a scheme or artifice—
>
>     (1) to defraud any health care benefit program; or
>     (2) to obtain, by means of false or fraudulent pretenses, representations, or promises, any of the money or property owned by, or under the custody or control of, any health care benefit program,
>
> in connection with the delivery of or payment for health care benefits, items, or services, shall be fined under this title or imprisoned not more than 10 years, or both.

18 U.S.C. § 1347.

In August 2021, Sisco, through retained counsel Stephen Owens, moved to dismiss the Indictment for failure to state a claim. D.E. 49. Even though the motion was untimely, District Judge Wier addressed the merits and denied the motion. D.E. 60. Judge Wier found the indictment was properly pled and Sisco's complaints about it were largely factual matters for the jury to decide. *Id*.

Transcripts of the trial are filed in the record. D.E. 112-118.

Following his conviction, Sisco, through different counsel, moved for a new trial (D.E. 99) and for a judgment of acquittal (D.E. 100). On March 4, 2022, District Judge Wier denied both motions. D.E. 141. Following a March 8 sentencing, Judgment was entered March 9, 2022. D.E. 147. Sisco's appeal was denied January 6, 2023. D.E. 172. Sisco did not seek review from the Supreme Court. He placed his postconviction motion in the prison mail on April 2, 2024, less than a year after the 90-day certiorari-petition window expired. D.E. 213 at 14.

Sisco's petition raises four grounds:

(1) Attorney Owens was ineffective for failing to introduce evidence regarding Sisco's compliance with Kentucky law to defend against the health care fraud charge. D.E. 213 at 4-5

(2) This Court lacked jurisdiction over the health care fraud claim. *Id*. at 6.

(3) Attorney Owens was ineffective for failing to introduce evidence regarding Sisco's compliance with Kentucky law to defend against the wire fraud charge. *Id*. at 8-9.

(4) This Court lacked jurisdiction over the wire fraud claim. *Id*. at 10.

### III. Analysis—Jurisdiction—Grounds Two & Four

Sisco argues in Grounds Two and Four that this Court lacked jurisdiction over the health-care-fraud and wire-fraud charges, respectively. D.E. 213 at 8, 10.

For Ground Two, Sisco argues that the frequency of urine testing is governed by Kentucky law, specifically 201 KAR 9:270 (discussed in more detail in Section IV below). *Id*. at 6. Sisco argues in his reply that the federal health-care-fraud statute "does not vest subject-

matter jurisdiction to the court, because Toxperts operated in compliance with Kentucky regulatory standards." D.E. 222 at 6.

For Ground Four, Sisco argues the Court lacked jurisdiction over the wire-fraud count because Renew Behavioral Health was "not a Medicaid service provider." D.E. 213 at 10. He says RBH's fee-for-service billing was "a State regulatory matter" and "did not amount to wire fraud." D.E. 222 at 8.

Sisco also adds a layer of IAC to these jurisdiction claims, arguing counsel was ineffective for "failing to make obvious objections to the application of the fraud statutes and subject-matter jurisdiction[.]" D.E. 222 at 7. He says there is a "high probability" the case "would have been dismissed in pre-trial" had counsel performed competently.[1] *Id*.

Health-care fraud is a federal crime that targets schemes "(1) to defraud any health care benefit program; or (2) to obtain, by means of false or fraudulent pretenses, representations, or promises, any of the money or property owned by, or under the custody or control of, any health care benefit program, in connection with the delivery of or payment for health care benefits, items, or services." 18 U.S.C. § 1347. Further, "the term 'health care benefit program' means any public or private plan or contract, affecting commerce, under which any medical benefit, item, or service is provided to any individual, and includes any individual or entity who is providing a medical benefit, item, or service for which payment may be made under the plan or contract." 18 U.S.C. § 24(b).

The Indictment's Count Two alleges that Sisco schemed to defraud and obtain money and property from "Medicare, Medicaid, and other health care benefit programs" by "causing

---

[1] It should be noted that Sisco's attorney moved pre-trial to dismiss the Indictment. D.E. 49. However, understandably, this motion did challenge the Court's subject-matter jurisdiction over the alleged crimes.

claims for payment to be submitted for medically unnecessary urine drug testing performed at Toxperts, LLC." D.E. 1 at 10-11. The Sixth Circuit upheld Sisco's conviction on Count Two:

> Turning to Sisco's health care fraud conviction under 18 U.S.C. § 1347, [to obtain a valid conviction,] the government needed to show that Sisco, by obtaining payment from Medicare or Medicaid for UDT, (1) created a "scheme or artifice" to defraud a health care program; (2) implemented that plan; and (3) acted with "intent to defraud." *United States v. Bertram*, 900 F.3d 743, 748 (6th Cir. 2018). In practice, health care fraud convictions often boil down to whether a defendant knowingly misrepresented or concealed material facts when requesting payment from a health care program. *See id.* (observing how this Court's "three-part test" interpreting 18 U.S.C. § 1347 "distract[s] more" than it "inform[s]" in a case about fraudulent urinalysis claims). At bottom, if Sisco knowingly "performed medically unnecessary tests" and billed Medicare or Medicaid for them, omitting information that revealed the impropriety of those tests necessarily constitutes a violation of § 1347. *See id.* at 749.
>
> Ample evidence showed as much. The jury heard that Sisco's decision to switch to weekly testing for every clinic patient resulted in unnecessary point-of-care tests, particularly for patients with a history of compliance. It heard that Sisco sent all urine samples that already underwent a point-of-care test to Toxperts for a redundant, expensive screening test. And it heard that Sisco required all initial screening tests to undergo an otherwise rarely needed confirmation test. And all of this took place without any physician orders for UDT from Sisco's clinics. Sisco's awareness of the scheme is evident from his decision to increase the frequency of UDT after his wire fraud scheme fell through, changes that a Sisco clinic doctor testified were all done for "billing" purposes.

*United States v. Sisco*, No. 22-5202, 2023 WL 119398, at *3-4 (6th Cir. Jan. 6, 2023).

Wire fraud in violation of 18 U.S.C. § 1343 occurs when a person transmits "by means of wire, radio, or television communication in interstate or foreign commerce" a communication designed to defraud or obtain money or property by false or fraudulent pretenses. According to the Indictment, Sisco transmitted "claims to the Medicaid program seeking payment for MAT services for which ASAP Addiction Clinic and Renew patients had also paid cash." D.E. 1 at 10. In other words, he billed both his patients and Medicaid.

The Sixth Circuit also upheld Sisco's conviction on Count One:

To prove wire fraud, the government had to show that Sisco (1) devised or participated in a scheme to defraud; (2) used interstate wire communications to further the scheme; and (3) intended to deprive the victim of money or property. *See United States v. Mazumder*, 800 F. App'x 392, 394 (6th Cir. 2020) (citing *United States v. Daniel*, 329 F.3d 480, 485 (6th Cir. 2003)). Sisco takes issue with the third element, which requires a showing that Sisco acted willfully—that is, for the "purpose of inducing" his victims to "part with [money or] property" that they would "not otherwise [part with] absent the misrepresentation." *Daniel*, 329 F.3d at 487 (quoting *United States v. DeSantis*, 134 F.3d 760, 764 (6th Cir. 1998)). Direct evidence of an intent to commit fraud is unnecessary; fraudulent intent can be "inferred from efforts to conceal the unlawful activity, from misrepresentations, from proof of knowledge, and from profits." *United States v. Davis*, 490 F.3d 541, 549 (6th Cir. 2007) (citations omitted).

The jury was presented with sufficient evidence to demonstrate Sisco's willful intent. First, consider his knowledge. There is no dispute that Sisco knew that he could not charge Medicaid-eligible patients for Medicaid-covered services. Indeed, state officials told him as much. Yet Sisco persisted in doing so, supporting an inference of willfulness. *See United States v. Skouteris*, 51 F.4th 658, 669 (6th Cir. 2022) (recognizing that proof of knowledge can give rise to a reasonable inference that defendant acted purposely); *United States v. Ellefsen*, 655 F.3d 769, 782 (8th Cir. 2011) (viewing the record as "replete with evidence" supporting the jury's finding as to intent where defendants "received multiple warnings" about the legality of their conduct). Next, consider Sisco's conduct. He gave his employees conflicting stories as to why he was charging patients, and then falsely told the employees that the government had blessed his decision. Those repeated misrepresentations further buttress the jury's conclusion. *See United States v. McLean*, 715 F.3d 129, 139 (4th Cir. 2013) (recognizing that "inconsistent explanations" for conduct can be probative of illicit fraudulent intent); *United States v. Strickland*, 509 F.2d 273, 276 (5th Cir. 1974) ("Concealment and falsification may reveal a consciousness of guilt and so help to carry the prosecutor's burden."). And then there is the money. Sisco accumulated millions of dollars over the years through this scheme, facts that likewise support an inference as to his intent. *See United States v. Bryant*, 849 F. App'x 565, 570 (6th Cir. 2021) (holding that "jury could easily infer" an intent to defraud when defendant received over $800,000 in illicit reimbursements).

Any doubt as to Sisco's intent is put to rest by his use of Renew Behavioral Health. Recall that Renew was functionally a shell corporation Sisco created. It existed only on paper to provide the illusion that an independent non-Medicaid provider was administering services to clinic patients, when, in reality, Sisco's Medicaid-eligible patients were receiving care from a Medicaid provider. As the jury learned, Sisco altered Renew's status as a Medicaid provider shortly after learning about Medicaid's rules against cash payments. All things considered, Sisco's use of Renew further confirms his intent to fraudulently obtain payments from clinic clients. *See United States v. Maddux*, 917 F.3d 437,

>446 (6th Cir. 2019) (recognizing that efforts to conceal unlawful activity can be a basis to infer a fraudulent intent).

*Sisco*, 2023 WL 119398, at *2-3.

Sisco was charged with, and convicted of, committing two federal statutory crimes. Federal courts have inherent, in fact, sole, jurisdiction over federal crimes.

>In federal criminal matters, the question of jurisdiction is straightforward. *See United States v. Hutsell*, 2015 WL 1810679, No. 5:10-cr-78-JMH-CJS (E.D. Ky. Apr. 21, 2015). Federal district courts have subject-matter jurisdiction over all offenses against the laws of the United States. 18 U.S.C. § 3231. Generally, the jurisdiction power of § 3231 is invoked when an indictment charges that the defendant committed a crime described in Title 18 or in one of the other statutes defining federal crimes, and the indictment uses similar language to the underlying statute. *See United States v. Scruggs*, 714 F.3d 258, 262 (5th Cir. 2013).

*United States v. Shahulhameed*, No. 5:12-CR-118-KKC-REW, 2018 WL 324728, at *2 (E.D. Ky. Jan. 8, 2018). Here, the Indictment charged Sisco with violating 18 U.S.C. §§ 1343 & 1347 and tracked the language of those sections. D.E. 1. Thus, subject-matter jurisdiction plainly existed.

Medical care is certainly subject to state regulation. Sisco's argument that the existence of state regulation preempts federal jurisdiction is incorrect. The Constitution's Supremacy Clause "provides a clear rule that federal law 'shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any state to the Contrary notwithstanding.' Art. VI, cl. 2." *Arizona v. United States*, 567 U.S. 387, 399 (2012). "The ordinary principles of preemption include the well-settled proposition that a state law is preempted where it 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" *Id*. at 406 (quoting *Hines v. Davidowitz*, 312 U.S. 52, 67 (1941)). Sisco provides no authority supporting the proposition that Kentucky health-care

9

regulations would impair this Court's jurisdiction over claims of wire fraud and health-care fraud.

Further, any argument by counsel against this Court having subject-matter jurisdiction would have been futile. Accordingly, there is no basis for finding deficient performance or prejudice on these grounds.

If Sisco is arguing there was insufficient evidence to convict on either Count, this argument has already been rejected on appeal and cannot be relitigated in a post-conviction motion.

### IV. Analysis – IAC—Grounds One & Three

In Ground One, Sisco argues that Kentucky law required his drug-testing service Toxperts to "conduct urinalysis on patients, at least once weekly and the frequency of testing could decrease to monthly, if sustained remission is determined." D.E. 213 at 4 (citing 201 Ky. Admin. Regs. 9:270). He faults counsel for not arguing to the jury that he was merely complying with this regulation.

In Ground Three, Sisco also argues counsel was ineffective for failing to introduce evidence that his clinic, which was not a Medicaid provider, operated in compliance with Kentucky law. D.E. 213 at 8.

> Concerning Ground One, the Indictment's Count Two alleges that
>
> SISCO caused all patients seeking addiction treatment at [his clinics] Renew or ASAP Addiction Treatment to provide a urine sample for testing each time they visited one of the clinics. SISCO caused all of those patient urine samples to be referred to Toxperts, LLC for urine drug testing. Pursuant to blanket orders implemented by SISCO and not by the physicians treating the patients, each urine sample underwent presumptive testing by Toxperts, LLC that was billed to the Medicaid and Medicare programs . . . . Pursuant to blanket orders implemented by SISCO and not by the physicians treating the patients, each urine sample with a positive presumptive test result, including a positive test result for the prescribed

10

> buprenorphine, underwent definitive testing by Toxperts, LLC that was billed to the Medicaid and Medicare programs[.]

D.E. 1 at 6-7.  In other words, Sisco's crime was enriching himself by making his clinic patients submit to urine testing performed by his testing company at every clinic visit, and that this testing went beyond what was medical reasonable.

> The regulation Sisco cites states,

> The licensee shall ensure that the patient is drug tested.  A patient in early stages of treatment shall be tested at least once weekly and as the patient becomes more stable in treatment, the frequency of drug testing may be decreased, but shall be performed at least on a monthly basis.  Individual consideration may be given for less frequent testing if a patient is in sustained remission.  If the patient returns to substance use after a period of abstinence, the licensee shall resume the early treatment testing schedule, in conjunction with an adapted or intensified treatment plan.

201 Ky. Admin. Regs. 9:270.  The regulation specifies that a licensee "shall be a DEA-licensed prescriber of Buprenorphine-Mono-Product or Buprenorphine-Combined-with-Naloxone." *Id*.

Contrary to Sisco's petition, Mr. Owens did call an expert at trial who discussed the regulation raised in Ground One (without citing the specific regulation by number).  On the fifth day of trial, Mr. Owens asked Dr. James Murphy about the frequency of drug testing.  Dr. Murphy responded, in part,

> Kentucky has regulations about how many drug screens you must do.  Now, you can do more, but at minimum, Kentucky is going to say, you have to do initially or within two weeks of initially.  And then every week for the first month of treatment, you have to do it every two weeks for the next month, and then monthly after that, and after a year, you could consider doing them less, but a lot of those regulations are written so they tell you how many you have to do, and they give the doctor an idea of how . . . if I want to do less, less drug screens, I know what I have to document to do it, but Kentucky is pretty specific about how many you have to do.

D.E. 117 at 28.  Dr. Murphy went on to explain that this testing regime is "mostly driven by the physician . . . the doctor's the one who usually decided how often that it needs to be done." *Id*. at

11

29. In fact, a drug test "has to be ordered by the doctor . . . the doctor or the nurse practitioner orders it." *Id*.

This means that Mr. Owens did bring this regulatory drug-testing regime to the jury's attention. Dr. Murphy described the weekly testing requirement and accurately stated that drug tests were supposed to be ordered by the medical practitioner. The jury nevertheless found that Sisco committed health-care fraud by ordering that all patients receive weekly testing, regardless of the medical provider's assessments. *See* D.E. 218 at 6-8. Given that Mr. Owens did what Sisco accuses him of failing to do, there is no basis for finding deficient performance on Ground One.

In terms of prejudice, Sisco argues that, had this regulation been described at trial, the jury "could have determined that ADAPT and Toxperts, LLC were in compliance with Kentucky State Law, regarding the frequency of testing." D.E. 213 at 5. As noted above, Sisco's counsel asked a medical expert about this regulation. And this expert accurately stated that the frequency of drug testing is to be determined by the medical provider. But evidence at trial showed that Sisco, who was not a physician, demanded each patient be tested at every visit. Rather than helping Sisco beat the health care fraud allegation, testimony about 201 KAR 9:270 actually incriminated him. Thus, there is no basis for finding prejudice due to insufficient reliance on this regulation at trial.

To the extent Sisco may be challenging the sufficiency of the evidence on Ground One/Count Two, this argument is barred as previously litigated.

Ground Three concerns Sisco's clinic, Renew Behavioral Health ("RBH"), and Count One's health-care-fraud charge. The Indictment alleges that SISCO sent claims to Medicaid "seeking payment for MAT services for which ASAP Addiction Clinic and [RBH] patients had

12

also paid cash." D.E. 1 at 10. Sisco insists that RBH "was not a Medicaid credentialed agency," and the counseling provided there "was not a Medicaid covered service." D.E. 213 at 9. He thus argues that, if Mr. Owens had properly explained the situation, the jury would have found RBH "was in compliance with Kentucky state law, regarding its billing platform." *Id*.

To the contrary, as the government demonstrates from the record, this theory was put forward by the defense. "The evidence at trial clearly showed that Renew Behavioral Health was initially enrolled as a Medicaid provider, and then un-enrolled in mid-2015 at Sisco's direction." D.E. 218 at 9. Even in closing arguments, Mr. Owens emphasized Sisco's argument that RBH, as a non-Medicaid provider, had not been operating contrary to law and Medicaid regulations. D.E. 118 at 49-52. In ruling on the post-trial motions, Judge Wier found "the counseling company, Renew BH, existed only on paper to support Sisco's scheme of charging cash and billing Medicaid at the same time." D.E. 141 at 9. And the Sixth Circuit, in upholding the conviction, described RBH as "functionally a shell corporation Sisco created [that] existed only on paper to provide the illusion that an independent non-Medicaid provider was administering services to clinic patients, when, in reality, Sisco's Medicaid-eligible patients were receiving care from a Medicaid provider." *United States v. Sisco*, No. 22-5202, 2023 WL 119398, at *3 (6th Cir. Jan. 6, 2023).

Because Mr. Owens raised these arguments at trial, there is no basis for finding deficient performance or prejudice. To the extent Sisco may be challenging the sufficiency of the evidence on Ground Three/Count One, this argument is barred as previously litigated.

## V. CONCLUSION

Sisco has failed to meet his burden of showing deficient performance and prejudice. Nor has he shown this Court lacked jurisdiction over the charges. The sufficiency of the evidence

was previously litigated on appeal. The undersigned therefore **RECOMMENDS** that Sisco's § 2255 motion (D.E. 213) be **DENIED**.

This case does not warrant an evidentiary hearing. Sisco's arguments are refuted by the existing record, particularly because the transcripts record the evidence and arguments presented at trial. Sisco complains that no affidavit from Mr. Owens was submitted in this case, but no affidavit is needed.

The undersigned further **RECOMMENDS** that no Certificate of Appealability issue. Under 28 U.S.C. § 2253(c)(2), a certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." *See also* Rule 11 of the Rules Governing Section 2255 proceedings. This standard is met if the defendant can show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983)). The Court has considered the issuance of a Certificate of Appealability as to each of Sisco's claims. No reasonable jurist would find the assessments on the merits above to be wrong or debatable; thus, no Certificate of Appealability should issue.

Any objection to, or argument against, dismissal must be asserted properly and in response to this Recommended Disposition. The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights and mechanics concerning this Recommended Disposition, issued under subsection (B) of the statute. *See also* Rules Governing Section 2255 Proceedings, Rule 8(b). Within **fourteen days** after being served with a copy of this decision, any party may serve and file specific written objections to any or all findings or recommendations for determination,

*de novo*, by the District Judge. Failure to make a timely objection consistent with the statute and rule may, and normally will, result in waiver of further appeal to or review by the District Judge and Court of Appeals. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Wandahsega*, 924 F.3d 868, 878 (6th Cir. 2019).

This the 3rd day of January, 2025.

Signed By:
*Hanly A. Ingram*
United States Magistrate Judge